IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DELPHI AUTOMOTIVE
SYSTEMS, LLC,

      Plaintiff,

v.

UNIVERSAL PALLETS, INC., *et al.*,

      Defendants.

Case No. 2:10-cv-113

Judge Edmund A. Sargus, Jr.

Magistrate Judge Abel

**OPINION AND ORDER**

This matter is before the Court upon Plaintiff Delphi Automotive Systems, LLC's Motion for Partial Summary Judgment on Counts I and II of Plaintiff's Complaint. (Doc. # 33.) Defendants United Plastics, Inc., Universal Pallets, Inc., and Michael Afaghi did not file a response to Plaintiff's motion. After careful review of the motion on its merits, and for the reasons that follow, the motion for partial summary judgment is **GRANTED in part and DENIED in part.**

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Delphi Automotive Systems, LLC ("Delphi") seeks partial summary judgment in its favor on two of its claims against Defendants United Plastics, Inc. ("United Plastics"), Universal Pallets, Inc. ("Universal Pallets"), and Michael Afaghi. Delphi seeks to hold Universal Pallets liable, under Ohio law, for a $1,658,516.73 judgment in Delphi's favor as against United Plastics.

1

Specifically, Delphi seeks judgment on alternative theories of successor liability: fraud (Count I) and de facto merger/mere continuation (Count II). Delphi filed its Complaint (doc. # 2) against United Plastics, Universal Pallets, and Mr. Afaghi on February 10, 2010, to which all three defendants filed a collective Answer (doc. # 10) on April 12, 2010. Delphi filed its Motion for Partial Summary Judgment on March 2, 2011, to which no response or request for extension of time to respond was filed.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When the moving party files a motion for summary judgment, the nonmoving party cannot "rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Rule 56(e) of the Federal Rules of Civil Procedure requires that the nonmoving party produce some evidence "to address another party's assertion of facts" by affidavits or as otherwise provided in the rule. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered

2

against the adverse party. Fed.R.Civ.P. 56(e); *see also Anderson*, 477 U.S. at 248-49; *First Nat'l Bank of Arizona v. City Servs.*, 391 U.S. 253, 289, *reh'g denied*, 393 U.S. 901 (1986).

Defendants' failure to respond to Delphi's motion for partial summary judgment warrants the granting of Delphi's motion. *See* S.D. Ohio Civ. R. 7.2(a)(2). However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Stough v. Mayville Cmty. Schools*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 846 F.2d 451, 455 (6th Cir. 1991)). "The court is required, at a minimum, to examine the motion for summary judgment to ensure that the movant has discharged his initial burden." *Id.* at 614. When a motion for summary judgment goes unopposed, the district court may properly rely upon the facts provided by the moving party. *Guarino v. Brookfield Township Trs.*, 908 F.2d 399, 404-05 (6th Cir. 1992).

### III. UNDISPUTED FACTS

The undisputed material facts, as set out in the complaint, answer, and answers to admissions, and the motion for partial summary judgment, are as follows. Plaintiff Delphi Automotive Systems, LLC ("Delphi") is a Delaware limited liability company with its headquarters and principal place of business located in Troy, Michigan. (Complaint, doc. # 2, ¶ 1.) Delphi is a supplier of scrap metal, including bronze, brass, and copper, and from its Warren, Ohio division, has sold scrap metal to Defendant United Plastics, Inc ("United Plastics"). (*Id.*, ¶ 7.) United Plastics is an Ohio corporation with its principal place of business in Franklin County, Ohio. (*Id.* at ¶ 3; Answer, doc. # 10, ¶ 1.) Michael Afaghi is United Plastics' sole shareholder and owner and its president. (Hooshiarnejad Depo., page 9; Afaghi Depo., page12 and 15.) From December 2006 through June 2007 Delphi and United Plastics entered into

several transactions for the sale and purchase of scrap metal, with terms of payment—as noted in Purchase Order No. 1 and Purchase Order No. 2—within 15 days. (Complaint, ¶¶ 4,8 – 10, 12; purchase orders and invoices attached to the Complaint as Exhs. A, B, and C.) United Plastics did not make payments to Delphi. (App'x to Motion for Partial Summ. J, Exh. 2[1], Admissions.) The unpaid invoices totaled $1,658,516.73 as of September 17, 2007. (Complaint, ¶¶ 4, 8 – 10, 12.)

According to corporate offices, the name "United Plastics" did not "match[ ] with the material that we [had] been selling" so its name was changed from "United Plastics" to "Universal Pallets." (*Id.* at pages 18 and 41; Afaghi Depo, page 24.) In January 2008, Defendant Universal Pallets, Inc. ("Universal Pallets") was formed by the filing of requisite paperwork with the Ohio Secretary of State. (Afaghi Depo., doc. # 36, pp. 24 – 25.) Universal Pallets is an Ohio corporation with its principal place of business located in Franklin County, Ohio. (Complaint at ¶ 2; Answer, doc. # 10, ¶ 1.)

Thereafter, Universal Pallets "took over all debts and all of the operations of the pallet section that was in United Plastics at that time".[2] (Hooshiarnejad Depo., page 17.) United Plastics' sole shareholder—Michael Afaghi—became Universal Pallets' sole shareholder. (Afaghi Depo., page 28.) United Plastics' Secretary/ Treasurer and Operational Manager, Ebrahim Hooshiarnejad, became the Secretary/Treasurer and Operational Manager of Universal Pallets. (Hooshiarnejad Depo., pages 7 and 31.) All employees of United Plastics became

---

[1] Responses to Request for Admissions and Request for Production of Documents, as propounded upon Defendant United Plastics, Inc. by Plaintiff Delphi from Delphi's earlier action in the United States District Court, Northern District of Ohio, captioned *Delphi Automotive Systems, LLC v. United Plastics, Inc.,* 5:08-cv-00253.

[2] This statement was offered by Defendants' counsel at the deposition of Mr. Hooshiarnejad.

4

employees of Universal Pallets. (*Id.*, page 31.) Universal Pallets continued in the same kind of pallet business that had formed over 90% of United Plastics' business. (*Id.* at page 41 and 43.) Further, Universal Pallets took over payments of all of United Plastics' liabilities—liens on trucks, leases, credit lines—except for the Delphi judgment. (Hooshiarnejad Depo., pages 25 – 26; Afaghi Depo., pages 40 – 43.) United Plastics transferred all of its assets to Universal Pallets, primarily trucks and equipment. (Hooshiarnejad Depo., doc. # 37, page30, Exh. A.) After the transfer of its assets, United Plastics' sales precipitously dropped: gross sales in 2008 were $13,421.00 and gross sales in 2009 were zero. (Derringer Depo., pages 64 – 66.) Although United Plastics currently exists as an entity, it conducts no business activity. (Hooshiarnejad Depo., page 7 and 16.)

Delphi brought an action against United Plastics[3] and others in the United States District Court, Northern District of Ohio, in 2008, alleging, *inter alia*, claims of breach of contract. (*Delphi Automotive Systems, LLC v. United Plastics, Inc.,* 5:08-cv-00253.) In that matter, the court granted summary judgment in favor of Delphi on its breach of contract and action on account claims (Counts One and Five), entering judgment in favor of Delphi against United Plastics in the amount of $1,658,516.73. (App'x to Motion for Partial Summ. J., doc. #34-3, Exh. B, "Memo. Opinion and Order," rendered September 9, 2009.)

## IV. ANALYSIS

In general, "the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346,

---

[3] According to Delphi's Motion for Partial Summary Judgment before this Court, Delphi was unaware of the formation of Universal Pallets, Inc. at the time it filed its action against United Plastics, Inc. in the Northern District of Ohio. (Mot. Partial Summ. J., doc. # 33-1, page 4.)

617 N.E.2d 1129 (1993). However, a corporation that purchases the assets of another may be liable for its predecessor's contractual liabilities if one of the following exceptions applies:

> (1) the buyer expressly or impliedly agrees to assume such liability;
> (2) the transaction amounts to a *de facto* consolidation or merger;
> (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Id.* at 347. Delphi seeks summary judgment in its favor on three of the exceptions: de facto merger, mere continuation, and/or fraudulent transfer.

### A. Count II – Successor Liability
### De Facto and Mere Continuation Exceptions

*1. De Facto Merger*

"A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Id.* at 349. To determine whether an asset sale constitutes a de facto merger, Ohio courts evaluate several factors:

> The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.* (quoting *Turner v. Bituminous Cas. Co.*, 397 Mich. 406, 420, 244 N.E.2d 873 (1976)).

The first hallmark of a de facto merger is "the continuation of the previous business activity and corporate personnel[.]" *Welco*, 67 Ohio St.3d at 349. There is no dispute that Universal Pallets has continued the established pallet business of United Plastics, which represented at least 90% of United Plastics' business. (Hooshiarnejad Depo., page 41.) In

6

addition, United Plastics and Universal Pallets have the same owner/sole shareholder—Mr. Afaghi (Afaghi Depo., page 28) —and the same Secretary/Treasurer/Operational Manager—Mr. Hooshiarnejad (Hooshiarnejad Depo., pages 7 and 31). So, too, United Plastics and Universal Pallets have the same employees, with all 20 of the United Plastics employees now working for Universal Pallets. (Hooshiarnejad Depo., page 31; Afaghi Depo., page 29.) Therefore, the first hallmark of a de facto merger is satisfied.

The second hallmark of a de facto merger is "a continuity of shareholders resulting from a sale of assets in exchange for stock[.]" *Welco*, 67 Ohio St.3d at 349. Here, United Plastics transferred all of its assets to Universal Pallets, including trucks and other equipment. (Hooshiarnejad Depo., page 30, Exh. A.) But there is no evidence of a *sale* of those assets in exchange for stock. The United Plastics stock is presumably still held by its sole shareholder, Mr. Afaghi, and Universal Pallets issued its own stock, again exclusively to Mr. Afaghi. Therefore, while there is a "continuity" of shareholders—Mr. Afaghi—that continuity is not the *result* of a "sale of assets in exchange for stock."

However, as noted in *Cytec Indus., Inc. v. B.F. Goodrich Co.*, a rule mandating the presence of all of the "hallmarks" of a de facto merger would be too rigid, as it would likely except some "transaction[s] that result[ ] in the dissolution of the predecessor corporation and [that are] in the nature of a total absorption of the previous business into the successor." 196 F.Supp. 2d 644, 658 (S.D. Ohio 2002). The significance of the second hallmark is to determine whether there exists a "nexus between the predecessor corporation and successor corporation[.]" *Id.* at 658 – 59 (noting that despite the *Welco* court's "acknowledgement that one court had found that an assets-for-stock transfer is the *sine qua non* of a *de facto* merger, the court has never stated that this is the *only* transaction in which there exists continuity of

7

shareholders."). Moreover, the *Cytec* court continued, the de facto merger doctrine "recognizes transactions that are mergers in fact without an official declaration of such." *Id.* at 658 (citing *Welco*, 67 Ohio St.3d at 349). In *Cytec,* the court found that the successor corporation's absorption of the predecessor corporation's assets and continued operation of its business was a transaction that "resulted in the nexus between the predecessor corporation and successor corporation that the continuity of shareholders 'hallmark' seeks to require," thus satisfying the second hallmark. *Id.* at 659.

Similarly, here, Universal Pallets absorbed United Plastics' assets, as testified to by both corporations' owner/sole shareholder and secretary/treasurer, and then it proceeded to continue the pallet work begun by its predecessor. The requisite "nexus" is present for the second hallmark to be satisfied.

The "rapid dissolution of the predecessor corporation" is the third hallmark of a de facto merger. *Welco*, 67 Ohio St.3d at 349. In *Cytec*, the court found the third hallmark satisfied where the predecessor corporation's stock was "liquidated and cancelled at the same time that [the successor corporation] acquired all of its assets." 196 F.Supp. 2d at 659. Further, "seven months later, the corporate entity [of the predecessor corporation] was dissolved pursuant to Ohio law." *Id.* On the other hand, the *Welco* Court found no de facto merger where the predecessor corporation did not dissolve immediately and where the transaction between the two corporations involved assets for cash, not a sale of assets for stock. 67 Ohio St.3d at 349.

Here, United Plastics has not been dissolved; it is still in existence, although "on a day-to-day basis" it does not function. (Afaghi Depo., page 13.) Delphi argues that "[f]or all intents and purposes, United Plastics has ceased to exist" as evidenced by its rapid decrease in sales in 2008 and zero sales in 2009. (Motion, page 10, citing Derringer Depo., pages 64 – 66.) Delphi's

8

argues further that the continued existence of United Plastics does not defeat its claim of de factor merger. (Motion, page 8, citing *Pottschmidt v. Thomas J. Klosterman, M.D., Inc.*, 169 Ohio App.3d 824, ¶ 29, 865 N.E.2d 111, 2006-Ohio-6964 (9th Dist. Ct. App., 2006).) The *Pottschmidt* court found that de facto merger had occurred despite the continued existence of the predecessor corporation where the following evidence was presented:

> . . . [T]he new corporation took possession of the original corporation's office equipment, medical supplies, and accounts receivable. The new corporation served substantially the same patients and was operated in the same building as the original corporation. There is a single 100 percent shareholder of both corporations, Dr. Klosterman. The new corporation pays the monthly office lease and equipment payments that the original corporation previously paid. The original corporation's employees were employed by the new corporation and were compensated by the new corporation for services rendered to the original corporation.

*Pottschmidt*, 169 Ohio App.3d at ¶ 29. The *Pottschmidt* court noted that "the continued existence of the transferor corporation does not defeat a claim for de facto merger except if the transferor retains sufficient assets to satisfy the claims of its creditors." *Id.* at ¶ 30 (quoting *Crislip v. Twentieth Century Heating & Ventilating Co.* (Feb. 15, 1989), 9th Dist. No. 13721, 1989 WL 11795, at *4) (internal quotation marks omitted). Significant to the *Pottschmidt* court's decision finding a de facto merger had occurred, the transferor there had not retained sufficient assets to satisfy its creditors' claim. *Id.* at ¶ 31. Nor, it appears, has United Plastics. Universal Pallets has taken possession of United Plastics' office equipment, office space, trucks, equipment, and employees and it is continuing United Plastics' pallet business, while United Plastics has no business, no equipment, and only a minimal banking account.

As a result of the foregoing, this Court finds that the third hallmark is satisfied, despite the continued—albeit anemic—existence of predecessor corporation United Plastics.

9

Finally, the fourth hallmark—"the assumption of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations"—is satisfied. Universal Pallets took over payments of all of United Plastics' obligations, such as payments for trucks, equipment, rent, and credit lines, obligations that enable Universal Pallets to continue United Plastics' pallet business. (Hooshiarnejad Depo., pages 25 – 26 and Exh. A; Afaghi Depo., pages 40 – 43.) Universal Pallets continues the pallet work that represented at least 90% of United Plastics' business. (Hooshiarnejad Depo. at page 41 and 43.)

The evidence clearly supports Delphi's claim under the de facto merger exception to successor liability under Ohio law. Defendants offer no contravening evidence at all, and, as a result, there is no genuine issue as to any material fact. Summary judgment in Delphi's favor is appropriate for its claim against Defendants under a de facto merger theory.

### 2. Mere continuation

Delphi also offers evidence in support of successor liability under the "mere continuation" theory. The basis of the mere continuation exception "is the continuation of the corporate entity, not the business operation, after the transaction." *Welco*, 67 Ohio St.3d at 350; *see also Flaugher v. Cone Automatic Machine Co.*, 30 Ohio St.3d 60, 507 N.E.2d 331 (1987).

> Such would be the case when one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation. This is actually a reorganization. This type of transaction is executed to escape liabilities of the predecessor corporation. Because the goal is to escape liability, inadequacy of consideration is one of the indicia of mere continuation.

*Id.* at 350 (citations and internal quotation marks omitted). As discussed, *supra*, United Plastics and Universal Pallets have identical ownership, shareholders, and officers—Mr. Afaghi and Mr.

10

Hooshiarnejad —and, therefore, Universal Pallets is no more than a "reincarnation" or reorganization of United Plastics. Although no actual sale took place between United Plastics and Universal Pallets, United Plastics "transferred" all of its assets to Universal Pallets. (Hooshiarnejad Depo., page 30, Exh. A.) Similar to the facts in *Pottschmidt* (where the Ohio court of appeals found factual support for the mere continuation exception), "both corporations [are] owned and operated [by the same person] utilizing the same employees, in the same building" and continuing in the same business. 169 Ohio App.3d at ¶ 31. Finally, Delphi offers uncontroverted testimony that Universal Pallets paid no consideration for United Plastics' assets, and this Court infers, as there is no evidence to the contrary, that the inadequacy of that consideration is indicative of United Plastics' wish to escape its liability to Delphi for the $1.6 million judgment. Therefore, under a mere continuation theory of successor liability, summary judgment in favor of Delphi is appropriate.

In summary, Delphi's motion for partial summary judgment with regard to Count II is hereby **GRANTED.**

### B. Count I – Successor Liability
### Fraudulent Transaction Exception

Delphi argues that the fourth exception to successor liability—fraudulent transaction—is applicable, as the evidence shows that Universal Pallets "was formed for the purpose of escaping United Plastic's liability to Delphi." (Motion, page 7; Count I of the Complaint.) Delphi cites only to *Burr v. South Bend Lathe, Inc.*, 18 Ohio App.3d 19 (1984) in support of that proposition. *Burr* is a products liability case with a syllabus focused on the lack of strict liability of a successor corporation in the absence of an agreement. While *Burr* touches on the issue of fraudulent transfer, it does so only in passing. *See id.* at 108-09. Therefore, this Court finds that Delphi does

11

not meet its initial burden under Rule 56 that it is "entitled to a judgment as a matter of law." As a result, Delphi's motion with regard to Count I is hereby **DENIED.**

## V. CONCLUSION

For the foregoing reasons, Plaintiff Delphi Automotive Systems, LLC's Motion for Partial Summary Judgment on Counts I and II of Plaintiff's Complaint (doc. # 33) is hereby **GRANTED in part and DENIED in part.** Summary judgment is **GRANTED** in favor of Delphi on **Count II** of its Complaint, and **DENIED** with regard to **Count I** of the Complaint. As a result, **Counts III, IV,** and **V** are rendered **MOOT.**

The Clerk of Courts shall hereby enter judgment in favor of Plaintiff, with interest awarded pursuant to the rate set forth in Ohio Revised Code §§ 1343.03 and 5703.47.

**IT IS SO ORDERED.**

Date: 7-30-2011

EDMUND A. SARGUS, JR.
United States District Judge

12